UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                       :

CENTRAL STATES, SOUTHEAST AND        :
SOUTHWEST AREA HEALTH, AND WELFARE:
FUND, an Employee Welfare Benefit Plan, and   :
ARTHUR H. BUNTE, JR., a Trustee thereof, in his :
respective capacity,                           :
                                                                        :
                      Plaintiffs,            :         13-cv-2994 (NSR)
    -against-                                :         OPINION AND ORDER
                                                                          :
GERBER LIFE INSURANCE COMPANY,   :
and ADMINISTRATIVE CONCEPTS, INC.,   :
                                                                          :
                      Defendants.           :
----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      This lawsuit arises from insurance claims made on behalf of seven covered individuals in connection with high school athletic injuries that they sustained while they were covered by both Central States, Southeast and Southwest Areas Health and Welfare Fund (collectively "Central States" or the "Fund") and Gerber Life Insurance Company ("Gerber"). Complaint, ¶¶ 8-11, and at Ex. B.

      Defendants move to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

**Background**

For purposes of this motion, this Court accepts as true the facts as stated in Plaintiffs' Complaint.  Central States is an employee welfare benefit plan regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1001 *et seq.* that provides health benefits, including medical and hospital benefits, to participants in the Teamster Industry and their dependents. Complaint ¶ 4.  Gerber is a private insurance company that has sold student accident medical insurance to the same seven covered individuals through various high schools and colleges. Complaint ¶ 6. Administrative Concepts, Inc. is a third party administrator that processed all of the claims at issue for Gerber. Complaint ¶ 7.

At the time of their injuries, the covered individuals were covered as dependents (immediate family members) of the Central States' participants. Complaint ¶ 4 and Exhibit B. The covered individuals were also covered directly by Gerber through their participation in the organizations to which Gerber sold insurance. Complaint ¶ 6.  The injuries that gave rise to the claims at issue occurred while the covered individuals were participating in high school athletic activities covered by Gerber's student accident policies. Complaint ¶¶ 29-35 and Exhibit B.  In total, the claims brought by the covered individuals and paid by Central States equal $101,686.07. Complaint ¶ 50.

When Central States receives claims for individuals who have overlapping insurance coverage, Central States' Plan establishes rules for determining coordination of benefit ("COB") rights. Complaint ¶ 21.  Central States' Plan COB provisions provide, in pertinent part, that overlapping insurance carriers are considered the primary insurers if they have no coordination of benefits provision in their plans, or if they provide specific risk coverage, including but not limited to, premises liability or medical benefits coverage. *Id.* Additionally, Central States' COB

provisions state that when another plan provides benefits to a person directly, as opposed to as a dependent, the other insurer has primary responsibility. *Id.*

Central States' Plan also sets forth Central States' right to reimbursement for any payments in excess of benefits payable under the terms of the Plan, from any responsible persons or entities. Complaint ¶ 20. The Plan authorizes Central States' Trustees to file suit on behalf of Central States against other plans to recover any such payments. Complaint ¶ 24. In addition, the Plan authorizes Central States' Trustees to seek a judicial declaration regarding the responsibility of other plans that are primarily responsible for the payment of benefits. Complaint ¶ 24.

Under Central States' COB rules, Central States maintains that the Defendants are primarily responsible for paying the covered individuals' medical expenses. Complaint ¶ 21. In an effort to avoid hardship to the covered individuals, Central States paid their medical expenses and sought reimbursement from the defendants. Complaint ¶¶ 29-35. However, defendants denied Central States' demands for reimbursement and claimed that the insurance policies that they issued were accidental injury excess policies that were meant to only provide excess coverage or coverage that is secondary to that provided by Central States. Complaint, Exhibit B. Plaintiffs then filed this lawsuit to enforce the terms of Central States' plan pursuant to Section 502(a)(3) of ERISA.

Defendants have moved to dismiss on the theory that Plaintiffs have failed to state a cause of action. Specifically, Defendants assert that Plaintiffs' claims are for monetary relief, which is not available under Section 502(a)(3) of ERISA.

**Discussion**

**A. Legal Standard**

3

### a. Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). Dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations of a complaint need not be detailed, but they must be sufficient to "nud[ge] . . . claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570—in other words, to raise a potential entitlement to relief beyond the "speculative level." *Id.* at 555. Thus, a pleading that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### b. Materials Considered on Motion to Dismiss

4

On a motion to dismiss, the court may consider the documents that are "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n. 2 (S.D.N.Y. 2012). "Specifically in the ERISA context, '[b]ecause the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss.'" *Faber v. Metropolitan Life Ins. Co.*, No. 08-cv-10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009) (quoting *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005)).

**B. As to Whether Plaintiff's Claims for Reimbursement of Paid Benefits are a Form of Equitable Relief under ERISA**

Defendants' motion to dismiss argues that Central States failed to plead a viable ERISA claim for equitable relief. The enforcement mechanism Plaintiffs pursues is ERISA § 502(a)(3), which states, in relevant part, that "[a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3) (emphasis added). "We have interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity) 'were typically available in equity.'" *CIGNA Corp. v. Amara*, — U.S. —, 131 S.Ct. 1866, 1878 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361 (2006)). Section 502(a)(3) acts as a "safety net, offering

5

appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).[1]

The core of the dispute here is "whether the remedy the Plaintiffs seek falls within such 'other appropriate equitable relief' as they may obtain" under Section 502. *Gerosa v. Savista & Co., Inc.,* 329 F.3d 317, 321 (2d Cir. 2003). Specifically, Supreme Court made clear in *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) that a court must look to the "real nature" of the relief sought, and not just the "equitable" label put on it by the plaintiff. Defendants rely on *Great–West* to argue that the relief sought by Plaintiffs is monetary and legal and not equitable and hence they lack a viable ERISA claim.

In *Great–West,* Petitioner insurance company sought reimbursement for insurance proceeds it previously paid to the Respondent, pursuant to the terms of the Plan that obligated the recipient of insurance proceeds to repay such moneys if the recipient later recovered at least that amount in a settlement or judgment. *Id.* at 207. The beneficiary had recovered from an alleged third-party tortfeasor. The Court addressed whether insurers can bring "subrogation-like" actions under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(3). The settlement funds that the insurer sought were not in the beneficiary's possession. *Id.* at 214. Rather, the settlement funds were

---

[1] Note that the second subsection of 502(a) provides an avenue for a civil suit by a plan beneficiary for "appropriate relief under section 409 [entitled 'Liability for Breach of Fiduciary Duties']." 29 U.S.C. § 1132(a)(2).  However, recovery under section 409 accrues to the plan, and not to the individual beneficiary.  29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary . . . .").  Further, the court in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) held that section 409 did not "authorize the plaintiff's suit for compensatory and punitive damages against an administrator who had wrongfully delayed payment of her benefit claim." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

partly directed into a Special Needs Trust to provide for medical care; partly disbursed to the beneficiary's attorneys; and the remainder was placed in a client trust to satisfy other creditors, including the insurer's claims. *Id.* at 661. Ultimately, the Supreme Court held that § 1132(a)(3) did not authorize an action for the specific performance of reimbursement, explaining that the term "equitable relief" refers to relief "typically available in equity." *Id.* at 209 (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). In the Court's view, the insurer's claim essentially imposed personal liability on the beneficiary to pay money, which was not a relief that is typically available in equity.

Justice Scalia, delivering the majority opinion, drew a fine distinction between remedies that a court should consider equitable rather than legal, and clarified that even where a party seeks restitution, a court must still decide "whether it is legal or equitable [which] depends on the basis for the plaintiff's] claim and the nature of the underlying remedies sought." *Id.* at 214 (citations and quotation marks omitted); *see also Neidich v. Estate of Neidich,* 222 F.Supp.2d 357, 375 (S.D.N.Y. 2002) ("Restitution for unjust enrichment may be sought under ERISA only if the nature of the restitution is equitable, not legal.").

Accordingly, a suit seeking to compel a defendant to pay a sum of money, whether by judgment or injunction, "[a]lmost invariably ... are suits for 'money damages,' as that phrase has traditionally been applied," and thus considered a remedy at law. *Great–West,* 534 U.S. at 210 (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)); *see also Great–West,* 534 U.S. at 210–11 (rejecting Petitioners' request for an injunction because an injunction "to compel the payment of money past due under a contract," and "specific performance of a contract to pay money" were not remedies typically available at equity unless

7

the injunction sought to prevent future losses); *Gerosa,* 329 F.3d at 321 ("Section 1132(a)(3) permits money awards only in very limited circumstances.").

The Court's decision that Petitioners actually sought to "impose personal liability" on respondents turned on the fact that the Respondent was not in actual possession of the money Petitioners sought. *Great–West,* 534 U.S. 210. The Court explained that where a plaintiff could not assert title or right to possession of particular property, but nevertheless "might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law." Id.* at 213 (citations and quotation marks omitted). The Court contrasted restitution in equity, which is usually sought through constructive trusts or equitable liens, where money or property *"identified as belonging* in good conscience to the plaintiff *could clearly be traced to particular funds or property in the defendant's possession." Id.* at 213; *see also* Restatement of Restitution § 160 cmt. i ("[A] constructive trust no longer continues when the person chargeable as constructive trustee of property no longer holds the property or other property which is its product."). The Court ruled that as "§ 502(a)(3), by its terms, only allows for *equitable* relief," the provision excludes "the imposition of personal liability . . . . for a contractual obligation to pay money." 534 U.S. at 221 (emphasis in original). "Almost invariably, suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* at 210, 122 S.Ct. 708 (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting)).

Courts interpreting *Great–West* have likewise held that a money or property must be traceable to a particular fund or property in a defendant's possession in order for the remedy to be considered equitable rather than legal. *See, e.g., De Pace v. Matsushita Elec. Corp.,* 257 F.Supp.2d 542 (E.D.N.Y. 2003) (citing *Great–West* for the proposition that a plaintiff's claims are at law when he or she seeks restitution of property or funds that have been dissipated, and that such restitution cannot be sought through imposition of a constructive trust or equitable lien); *Neidich,* 222 F.Supp.2d at 375 ("The money already dispersed to [defendants] can not be recovered in equity pursuant to ERISA, § 502(a)(3), because these disbursements can no longer be traced to a particular fund."); *Primax Recoveries Inc. v. Carey,* 247 F.Supp.2d 337, 341–42 n. 6 (S.D.N.Y. 2002) (suggesting that a case should be dismissed for failure to state a claim where a plaintiff seeks restitution of funds that have been dissipated or cannot be traced).

In light of *Great–West* and its progeny, Plaintiffs state that they seek "declaratory relief" rather than enforcement of a contractual obligation since the parties have had no contractual relationship. Plaintiffs' Opposition at 17. Plaintiffs maintain that all of the remedies that they seek are equitable rather than legal. Opposition at 18. Plaintiffs' Opposition argues that their claim for restitution and equitable lien and constructive trust arise from the fact that Defendants have improperly come into possession of funds belonging to Central States, not that Central States has failed to receive the benefit of the bargain in any transaction. Plaintiffs argue that Defendants' motion to dismiss "should be denied because: (1) the evolution of Supreme Court case law indicates that Defendants are in constructive possession of funds that belong to Central States; and (2) even if Defendants are somehow not in possession of funds belonging to Central States, Plaintiffs' claim for declaratory relief would nevertheless remain an equitable claim that should be addressed by the Court." Opposition at 6.

The Court, however, is not convinced. The crux of Defendants' argument is that ERISA § 502(a)(3) only allows ERISA Plans to recover for equitable relief, and that this case is, as Defendants argue, "a classic suit for money damages/legal relief…." Defendants' Mem. of Law at 17. Specifically, Defendants maintain that the Fund's claims for (I) declaratory judgment for unpaid and future expenses; (II) declaratory judgment for past expenses; (III) restitution; and (IV) equitable lien/constructive trust are classically monetary claims because, as they argue, there are no specifically identifiable and traceable funds or property originally belonging to the Fund that are now in Defendants' possession.

Fiduciaries, such as trustees of ERISA-based funds, have a duty to locate and reclaim trust fund assets that have been improperly taken or disbursed. *Central States v. Central Transp., Inc.,* 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); *Gerosa v. Savista & Co., Inc.,* 329 F.3d 317, 320 (2d Cir. 2003). "For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 214, 122 S.Ct. 708, 714–15, 151 L.Ed.2d 635 (2002).

In *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), the Supreme Court again addressed the question of whether an action seeking reimbursement under ERISA for benefits paid by a plan constituted a form of "equitable relief." In that case, the beneficiaries of a health plan were injured in a car accident, and the insurer paid a sum of money to cover medical expenses under the ERISA plan. The plan contained an "Acts of Third Parties" provision, which required the beneficiary to reimburse the insurer for benefits that it recovered from a third party. The beneficiaries settled their tort suit,

and the insurer filed suit seeking to collect the sum it had paid for the beneficiary's medical expenses. The Court determined that the insurer's claim sounded in equity because, unlike in *Great–West* where the petitioner sought funds which had been placed in a trust, the insurer in *Sereboff* "sought identifiable funds within the beneficiary's [Sereboffs'] possession and control." *Id.* at 357.

In *Thurber v. Aetna Life Ins. Co.,* 712 F.3d 654, 663 (2d Cir. 2013), the Second Circuit clarified why the Supreme Court reached different results in *Great–West* and *Sereboff.* In *Thurber,* an insurer counterclaimed against a beneficiary for equitable restitution of overpaid short-term disability benefits. The Second Circuit explained that in *Great–West,* the insurer could not assert an equitable lien on settlement funds because the funds were contained in a separate entity, a restrictive trust, while in *Sereboff,* the beneficiaries had "possession and control over the specific funds sought by their insurer." *Id.* at 663. The Second Circuit further explained that, in *Sereboff,* the ERISA plan "specifically identified a particular share of particular funds subject to return," and consequently, the insurer 'could rely on this familiar rule of equity to collect for the medical bills it had paid.'" *Id.* Furthermore, the Second Circuit held that, in *Thurber,* although the case differed from *Sereboff* in that the "particular fund" was an overpayment of benefits and not third-party income and that the overpayments had "dissipated," the claim brought was nevertheless equitable because the insurer sought specific funds, namely overpayments in a specific amount (the total overpayment) as authorized by the plan. *Id.*

Plaintiff asserts that she is not seeking contractual-based rights but, instead, is seeking "declaratory relief for guidance on how to administer its plan." Opposition at p. 18. Plaintiff cites *Board of Trustees of the CWA/ITU Negotiated Pension Plan, et al. v. Weinstein*, 107 F.3d 139 (2d Cir. 1997) for the holding that claims for declaratory relief are equitable and within the

11

scope of Section 502(a)(3)(B) of ERISA, rejecting defendant's argument that such a claim be dismissed. Here, plaintiff's prayer for "equitable" relief is properly characterized as a legal remedy unavailable under 502(a)(3), *see Great–West Life & Annuity Ins. Co.,* 534 U.S. 204, 213–18 (2002) (claim for restitution is legal and unauthorized by 502(a)(3), where basis "is not that [defendants] hold particular funds that, in good conscience, belong to [plaintiff], but that [plaintiff is] contractually entitled to *some* funds" (emphasis original)); *see also Cigna Corp. v. Amara,* 131 S.Ct. 1866, 1878, 1883–84 (2011) (in part, Scalia, J., concurring) (not disturbing *Great–West* and, in relevant part, "purely dicta, binding upon neither [the Supreme Court] nor the District Court").

As the Second Circuit has observed in an action by ERISA plan beneficiaries seeking recalculation and payment of benefits via an injunctive order, "[w]hile the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under Section 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available [and forecloses application of Section 502(a)(3) where other relief provisions of ERISA are applicable]." *Frommert v. Conkright,* 433 F.3d 254, 270 (2d Cir. 2006), *citing Gerosa v. Savasta & Co., Inc.,* 329 F.3d 317, 321 (2d Cir. 2003) ("[i]n determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label").

The relief that Plaintiff seeks is monetary in nature and not equitable as anticipated by § 502(a)(3). *See Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 119 (2d Cir. 2009) ("Furthermore, § 1132(a)(3) only applies to claims for injunctive relief, and despite [Plaintiff's] assertions to the contrary, many of [Plaintiff's] claims are effectively claims for

money damages outside the scope of § 1132(a)(3)."); *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006) ("The district court's starting premise is correct: suits may be brought under § 502(a)(3) only for those categories of relief that were typically available in equity, and classic compensatory damages are never included within these categories.") (internal citations and alterations omitted); *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."); *Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503, 515 (S.D.N.Y. 2006) ("[Plaintiff] does not allege facts and conduct with respect to his fiduciary duty claim that are in any way different from the allegations supporting his other ERISA causes of actions. Consequently, the Court finds in this action there is no 'appropriate equitable relief' necessary to remedy the harm alleged that is not adequately addressed by the relief available under § 502(a)(1)(B).").

In *CIGNA Corp. v. Amara*, the Supreme Court was faced with a dispute regarding the failure to properly disclose information between an employer and beneficiaries of a pension plan that had been converted to a "cash balance" retirement plan. *CIGNA*, 131 S.Ct. 1866, 1870 (2011). The Court found that ERISA § 502(a)(3) instead of § 502(a)(1)(B) gave the District Court authority to reform the terms of the plan and enforce the new terms of the plan, which included the payment of money owed already retired beneficiaries. *Id*. at 1880. Although "this relief takes the form of a money payment, [that fact] does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id*. The circumstances here are distinguishable from *CIGNA* in a

critical way.  The equitable relief granted by the District Court under *CIGNA* was the reformation of the plan documents, the result of which was the award of monetary payment. Plaintiff here seeks monetary damages that essentially derive from the claim determination, which is based on the terms of the Plan documents.  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) ("We decline this invitation to perceive equitable clothing where the requested relief is nakedly contractual."). In *Nechis*, the Second Circuit upheld the dismissal of a plaintiff's claims for restitution, an equitable lien, and constructive trust as impermissible legal/monetary claims for relief.

Defendants rely on two recent district court cases that dismissed Central States' complaints in those proceedings, *Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Health Special Risk Ins. Inc., et al.,* Civ. No. 3:11-2910 (N.D. Texas 2013), and *Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Bollinger, Inc., et al.*, Civ. No. 2:13-02760 (D. N.J. 2013).While Plaintiffs point out that both cases are pending appeal, they concede that both cases are indistinguishable from the case at hand. Rather, they maintain that these cases were incorrectly decided and should not be followed by this Court. However, this Court finds the prior *Central States* cases to be persuasive. *See also, Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 103–04 (2d Cir. 2005) ("[Plaintiff] cannot satisfy the conditions required for injunctive relief; any harm to her can be compensated by money damages, and she could have pursued an alternative and effective remedy under § 502(a)(1)(B) of ERISA to recover the value of benefits wrongly denied."); *see also Kendall,* 561 F.3d at 119 ("claims [that] are effectively claims for money damages [are] outside the scope of § 1132(a)(3)"); *Wilkins v. Mason Tenders District Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006) ("We believe, however, that Wilkins's claim may be understood not as a claim for equitable relief under § 502(a)(3), but as a claim to

recover plan benefits under § 502(a)(1)(B)."); *Levin v. Credit Suisse, Inc.*, No. 11-cv-5252(RJS), 2013 WL 1296312, at *3 (S.D.N.Y. Mar. 19, 2013).

Reimbursement to Central States is not the type of "equitable relief" anticipated by the statute, and there is no "appropriate equitable relief" alleged to be in Defendants' possession. *Varity*, 516 U.S. at 515.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's Complaint. The clerk of the court is directed to terminate the motion. (Docket No. 28).

Dated: November 26, 2013
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge